**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**U.S. BANK TRUST, N.A.,** *as Trustee for LSF8*
*Master Participation Trust,*

                                 **Plaintiff,**

    **vs.**                                      **1:17-cv-173**
                                                **(MAD/CFH)**

**BRIAN VALADE and NICOLE VALADE,**

                                 **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**GROSS, POLOWY LAW FIRM**       **STEPHEN J. VARGAS, ESQ.**
900 Merchants Concourse
Suite 412
Westbury, New York 11590
Attorneys for Plaintiff

**BRIAN VALADE**
805 Old Schaghticoke Road
Schaghticoke, New York 12154
Defendant *pro se*

**NICOLE VALADE**
174 Schoolhouse Road
Schoharie, New York 12157
Defendant *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action on February 17, 2017, seeking to foreclose on a mortgage

pursuant to Article 13 of the New York Real Property Actions and Proceeding Law ("RPAPL").

*See* Dkt. No. 1.  Currently before the Court is Plaintiff's renewed motion for summary judgment

against Defendant Brian Valade and for default judgment against Defendant Nicole Valade.  *See* Dkt. No. 57.

## II. BACKGROUND

Plaintiff is a national banking association with its main office as set forth in its Articles of Association located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19809.  *See* Dkt. No. 58 at ¶ 1.  Defendant Brian Valade is a citizen of New York, and the owner of the real property located at 805 Old Schaghticoke Road, Schaghticoke, New York 12154 (the "Property").  *See id.* at ¶ 2.  Defendant Nicole Valade is a citizen of New York, and the owner of the Property.  *See id.* at ¶ 3.

On October 6, 2006, Defendants obtained a mortgage loan from Household Finance Realty Corporation of New York, in the original principal amount of $185,998.16, memorialized in a loan agreement dated January 15, 2007, and secured by a mortgage and consolidation agreement dated October 6, 2006, on real property located at 805 Old Schaghticoke Road, Schaghticoke, New York 12154, recorded in the office of the Rensselaer County Clerk on October 11, 2006.  *See id.* at ¶ 4.  Plaintiff is the holder of the promissory note and mortgage.  *See id.* at ¶ 5.  There is a default under the terms and conditions of the promissory note and mortgage because the May 19, 2013, and subsequent payments were not made.  *See id.* at ¶ 6.

In compliance with RPAPL § 1304, a ninety-day pre-foreclosure notice was sent to Defendant Brian Valade via first class and certified mail to 805 Old Schaghticoke Road, which is the Property Address, and to P.O. Box 271, Schaghticoke, New York 12154-0271, which is his last known address.  *See id.* at ¶ 7.  Similarly, a ninety-day pre-foreclosure notice was sent to Defendant Nicole Valade via first class and certified mail to 805 Old Schaghticoke Road, which is the Property address, and to 174 Schoolhouse Road, Schoharie, New York 12157-3417, which

is her last known address. *See id.* The RPAPL § 1304 notice was mailed on August 8, 2016, and

listed at least five (5) housing counseling agencies. *See id.* Caliber Home Loans, Inc., within

three business days of mailing said notice to Defendants, electronically filed notice with the

Superintendent of Financial Services on August 10, 2016, as required by RPAPL § 1306(2) and

confirmation number NYS4051770 was issued. *See id.* at ¶ 8. A notice of default dated October

4, 2016 was mailed to Defendants at the addresses listed above. *See id.* at ¶ 9.

Plaintiff commenced this action on February 17, 2017, by filing the summons and

complaint. *See* Dkt. No. 1. On April 13, 2017, Plaintiff filed the summons, complaint, and notice

of pendency of action in the Rensselaer County Clerk's Office. *See* Dkt. No. 58 at ¶ 11. As of the

date of the complaint, the May 19, 2013, payment and subsequent payments were not made and

the unpaid principal balance was $174,928.83, together with interest, costs, and disbursements.

*See* Dkt. No. 1.

Defendant Brian Valade filed an answer on March 28, 2017. *See* Dkt. No. 6. Defendant

Nicole Valade failed to answer, appear, or move with respect to the complaint. On May 5, 2017,

Plaintiff filed a request for a certificate of default, which was entered by the Clerk on May 8,

2017. *See* Dkt. Nos. 13 & 14. Two prior applications for a judgment of foreclosure and sale were

made. On October 22, 2020, Judge Suddaby denied the most recent prior application for relief

sought via a Decision and Order, citing Plaintiff's failure to prove that it filed a copy of the

complaint with the notice of pendency of action in the Rensselaer County Clerk's Office. *See*

Dkt. No. 55.

On January 4, 2021, this case was stayed pursuant to the COVID-19 Emergency Eviction

and Foreclosure Prevention Act. *See* Dkt. No. 48. On April 12, 2021, Judge Suddaby lifted the

stay in this case. On December 8, 2021, Plaintiff informed the Court that Defendant Brian Valade

filed a chapter 13 bankruptcy petition which, pursuant to 11 U.S.C. § 362(a) automatically stayed this case. *See* Dkt. No. 62. On May 24, 2023, Judge Suddaby reopened this case and reinstated the pending motion for default judgment and summary judgment after Defendant Brian Valade's bankruptcy case was dismissed. *See* Dkt. No. 65. Thereafter, on May 31, 2023, Judge Suddaby recused himself and the case was reassigned to the undersigned. *See* Dkt. No. 66. To date, Defendants have not responded to Plaintiff's motion.

### III. DISCUSSION

**A.     Standard of Review**

*1. Summary Judgment*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect

4

to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### *2. Default Judgment*

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  *See* Fed. R. Civ. P. 55(b).

Further procedural requisites are imposed by Local Rule 55.2, requiring a party to submit the entry of default, a proposed default judgment, a copy of their pleading, and an affidavit setting forth the following:

> 1. The party against whom it seeks judgment is not an infant or an incompetent person;
>
> 2. The party against who it seeks judgment is not in the military service, or if unable to set forth this fact, the affidavit shall state that the party against whom the moving party seeks judgment by default is in the military service or that the party seeking a default judgment

is not able to determine whether or not the party against whom it
seeks judgment by default is in the military service;

3. The party has defaulted in appearance in the action;

4. Service was properly effected under Fed. R. Civ. P. 4;

5. The amount shown in the statement is justly due and owing and
that no part has been paid except as set forth in the statement this
Rule requires; and

6. The disbursements sought to be taxed have been made in the
action or will necessarily be made or incurred.

N.D.N.Y. Local Rule 55.2.

The Second Circuit has cautioned that default judgment is an extreme remedy, and

therefore should be entered only as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.

1981). Although the Second Circuit has recognized the "push on a trial court to dispose of cases

that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its

calendar," it has held that district courts must balance that interest with the responsibility to

"[afford] litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96. Thus, in

light of the "oft-stated preference for resolving disputes on the merits," default judgments are

"generally disfavored," and all doubts should be resolved in favor of the defaulting party. *Id.*

Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of

right simply by virtue of a defendant's procedural default. *See Erwin DeMarino Trucking Co. v.

Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default

judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to

grant a default judgment, including: (1) whether the grounds for default are clearly established;

(2) whether the claims were pleaded in the complaint, thereby placing defendants on notice of the

relief sought, *see* Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *Enron Oil Corp.*, 10 F.3d at 95-96; *cf. King v. STL Consulting, LLC*, No. 05 CV 2719, 2006 WL 3335115, *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of a litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved — the more money involved, the less justification for entering default judgment. *See Hirsch v. Innovation Int'l, Inc.*, No. 91 CV 4130, 1992 WL 316143, *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant." *Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The plaintiff bears the burden of establishing their entitlement to recovery.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Upon entry of default, the defendants are deemed to have admitted all well-pleaded factual allegations in the complaint pertaining to liability, but not legal conclusions or allegations relating to damages.  *See id.*; *see also Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09 CV 5558, 2013 WL 5329254, *3 (E.D.N.Y. Sept. 20, 2013).  It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish each defendant's liability on each cause of action asserted. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  In determining whether the plaintiff has met that burden, however, the Court draws all "reasonable inferences from the evidence

offered" in the plaintiff's favor.  *Id.* (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating each defendant's liability, the plaintiff must also establish his or her entitlement to damages to a "reasonable certainty."  *Gunawan v. Sushi Sake Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  Although "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Servs., Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), *aff'd*, 873 F.2d 38 (2d Cir. 1989).

### 3. Deference to Pro Se Litigants

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    Application**

### 1. Liability

In the present matter, the Court finds that Plaintiff has established it is entitled to a judgment of foreclosure and sale.  In an action to foreclose a mortgage under New York law, a plaintiff establishes a *prima facie* case as a matter of law "by presenting the note, mortgage, and proof of default." *Eastern Savs. Bank, FSB v. Evancie*, No. 13-cv-878, 2014 WL 1515643, *4 (E.D.N.Y. Apr. 18, 2014) (citation omitted).  Here, Plaintiff established its *prima facie* entitlement to summary/default judgment by submitting the loan agreement, mortgage and consolidation agreement, and affidavit of Kolette Modlin, an authorized officer of Caliber Home Loans, Inc. ("Modlin Affidavit"), as evidence of Defendants' failure to make mortgage loan payments as contractually required.  *See* Dkt. Nos. 60-2 & 60-9.  The Modlin Affidavit was accompanied by a limited power of attorney authorizing Caliber Home Loans, Inc. to act on behalf of Plaintiff as its mortgage loan servicer and attorney-in-fact.  *See* Dkt. No. 60-11; *see also U.S. Bank, N.A. v. Smith*, 132 A.D.3d 848, 850 (2d Dep't 2015); *Federal Nat'l Mortgage Assoc. v. Zapata*, 143 A.D.3d 857, 858-59 (2d Dep't 2016).  Accordingly, the burden shifts to the answering defendant (Defendant Brian Valade) to make an affirmative showing substantiating the affirmative defenses in the answer with evidentiary proof in admissible form sufficient to require a trial.  *See Evancie*, 2014 WL 1515643, at *4 (citation omitted).  As Plaintiff correctly contends, Defendant Brian Valade's affirmative defenses are meritless.

As his first affirmative defense, Defendant Brian Valade alleged that the complaint fails to set forth a cause of action upon which relief can be granted.  *See* Dkt. No. 6.  A complaint sufficiently sets forth a cause of action for foreclosure where it alleges the existence of a note, the repayment of which is secured by a mortgage, and that the defendant defaulted in the repayment of the note and mortgage.  *See Regency Savs. Bank F.S.B. v. Merritt Park Land Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001); *Valley Nat'l Bank v. Deutsche*, 88 A.D.3d 691, 692 (2d Dep't

2011).  Here, the complaint sets forth the existence of the note and mortgage executed by Defendants on October 6, 2006, as well as their default in payment under the terms of the note and mortgage.  *See* Dkt. No. 1 at ¶¶ 10-12, 14-15.  As such, Defendant Brian Valade's first affirmative defense is meritless.

In his second affirmative defense, Defendant Brian Valade alleged that he filed for bankruptcy in or about 2010, although the bankruptcy was dismissed in or about March 2016, "during the period that the bankruptcy was pending, [he] made payments to the bankruptcy trustee in accordance with the modified payment schedule, ... [but] the payments were not properly credited to [his] mortgage." Dkt. No. 6 at 1.  Defendant Brian Valade contends that the documents submitted with his answer support this allegation.  *See id.*

Contrary to Defendant Brian Valade's allegations, the documents submitted with his answer do not support this affirmative defense.  First, the Modlin Affidavit sets forth the amount owed by Defendants to Plaintiff that includes but was not limited to $174,928.83 in unpaid principal and $80,124.09 in unpaid accrued interest from April 19, 2013 to October 26, 2019.  *See* Dkt. No. 60-9.  Second, the document titled "Disbursements" shows that Caliber Home Loans, Inc. and its predecessor HSBC Mortgage Services Inc. paid $39,820.46 in disbursements on behalf of Plaintiff to protect its interest in the Property; it does not show Defendants made any payments.  Third, the Order Amending Confirmed Plan of Reorganization so ordered by United States Bankruptcy Judge Robert E. Littlefield, Jr. does not prove Defendant Brian Valade made any payments beyond those Plaintiff credited him for.  Fourth, as Plaintiff notes, the Bellcourt Valuation Service Appraisal Report dated November 14, 2016 is irrelevant to the issue of any alleged payments.  Accordingly, Defendant Brian Valade's second affirmative defense is without merit.

In his third and final affirmative defense, Defendant Brian Valade alleged that Plaintiff failed to comply with the statutory mortgage foreclosure requirements as it did not properly serve Defendants with notice at least 90 days before commencing the instant action.  *See* Dkt. No. 6 at 1-2.  Pursuant to RPAPL § 1304, with regard to a home loan, at least ninety days before a lender, assignee, or mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, the lender or mortgage loan servicer shall give notice to the borrower in at least fourteen-point type, which shall include certain statutorily-mandated content.  RPAPL § 1304(2) provides that such notice must be sent by registered or certified mail and by first-class mail to the last known address of the borrower.  Proper service of the RPAPL § 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action and the plaintiff has the burden of establishing satisfaction of this condition.  *See Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 106 (2d Dep't 2011).  Mailing may be proven by any number of documents meeting the requirements of the business records exception to the hearsay rule.  *See HSBC Bank USA, N.A. v. Ozcan*, 154 A.D.3d 822, 825-26 (2d Dep't 2017) (holding that the submission of an affidavit of a vice president based on her personal knowledge and review of regularly made and maintained business records established the plaintiff's *prima facie* case that it complied with the mailing requirements of RPAPL § 1304).

Here, Plaintiff established that it strictly complied with the notice requirements of RPAPL § 1304 that, at least 90 days before commencing the action, it served Defendants with a proper notice under the statute by submitting proof of timely, proper service of a fully compliant RPAPL § 1304 notice.  *See Emigrant Mortgage Co., Inc. v. Persad*, 117 A.D.3d 676, 677 (2d Dep't 2014). According to the Affidavit of Mailing of Romualdo D. Fernandez, Authorized Officer of Caliber Home Loans, Inc. ("Fernandez Affidavit"), the RPAPL § 1304 notices were mailed to Defendants

on August 8, 2016, which was more than 90 days prior to the date on which the action was commenced. *See* Dkt. No. 60-10. Mr. Fernandez testified the notices were sent, separate from any other mailing or notice, enclosed in both a certified mail, postage prepaid envelope and also a first-class mail, postage prepaid envelope, and both envelopes were provided to the United States Post Office for mailing, addressed to Defendants at their respective last known addresses. *See id.* This evidence satisfies Plaintiff's burden. *See CitiMortgage, Inc. v. Espinal*, 134 A.D.3d 876, 878-79 (2d Dep't 2015).

Plaintiff also demonstrated compliance with this section by submitting proof of mailing by the post office. *See CitiMortgage, Inc. v. Pappas*, 147 A.D.3d 900, 901 (2d Dep't 2017). The United States Post Office ("USPS") Tracking results reflect the notice assigned USPS tracking number 9307110011700877485812 and addressed to Defendant Brian Valade at P.O. Box 271, Schaghticoke, New York 12154-0271 was "delivered" in Schaghticoke, New York 12154 at 3:48 p.m. on August 25, 2016. The USPS Tracking results reflect the notice assigned USPS tracking number 9307110011700877485829 and addressed to Defendant Brian Valade at 805 Old Schaghticoke Road, Schaghticoke, New York 12154-3416 was "delivered" in Schaghticoke, New York 12154 at 3:48 p.m. on August 25, 2016. *See* Dkt. No. 60-10.

The USPS Tracking results reflect the notice assigned USPS tracking number 9307110011700877485836 and addressed to Defendant Nicole Valade at P.O. Box 271, Schaghticoke, New York 12154-0271 was "delivered" in Schaghticoke, New York 12154 at 3:48 p.m. on August 25, 2016. The USPS Tracking results reflect the notice assigned USPS tracking number 9307110011700877485843 and addressed to Defendant Nicole Valade at 805 Old Schaghticoke Road, Schaghticoke, New York 12154-3416 was "delivered" in Schaghticoke, New York 12154 at 3:48 p.m. on August 25, 2016. Finally, the USPS Tracking results reflect the

notice assigned USPS tracking number 9307110011700877489599 and addressed to Defendant Nicole Valade at 175 Schoolhouse Road, Schoharie, New York 12157-3417 was "delivered" in Schaghticoke, New York 12154 at 4:38 p.m. on August 15, 2016.  *See* Dkt. No. 60-10.

Neither Defendant responded to the pending motion and in his answer, Defendant Brian Valade merely averred that Plaintiff violated RPAPL § 1304.  This is insufficient to create a genuine question of material fact regarding Plaintiff's satisfaction with the statutory notice requirements.  *See CIT Bank, N.A. v. Escobar*, No. 16-cv-3722, 2017 WL 3614456, *5 (E.D.N.Y. June 16, 2017) (citation omitted).  Accordingly, Plaintiff demonstrated its strict compliance with RPAPL § 1304 and Defendant Brian Valade's third and final affirmative defense is meritless.

### *2. Damages and Costs*

In support of its motion, Plaintiff relies on the Modlin Affidavit.  As part of Modlin's regular performance of her job functions, she is familiar with the business records maintained by Plaintiff for the purpose of servicing mortgage loans.  *See* Dkt. No. 60-9 at ¶ 1.  The Modlin Affidavit establishes that Plaintiff is entitled to judgment in the amount of $324,274.48 with an unpaid principal balance of $174,928.83 as of October 26, 2019, with contractual interest at the rate of 7.026%, which results in a per diem rate until entry of this order and the statutory rate thereafter.  *See id.* at ¶ 10.

As set forth in the note and mortgage, the parties unequivocally agreed that Plaintiff was entitled to an award of costs in the event of default.  Plaintiff seeks $1,239.69 in costs, which are all permissible costs that may be taxed against Defendants.  *See* Dkt. No. 60-17 at 2. Accordingly, Plaintiff is entitled to a total judgment in the amount of $325,514.17, along with a judgment of foreclosure and sale.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion for default and summary judgment is **GRANTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** Plaintiff is awarded summary judgment against Defendant Brian Valade; and the Court further

**ORDERS** that Plaintiff is awarded default judgment against Defendant Nicole Valade; and the Court further

**ORDERS** that judgement of foreclosure and sale is in the amount of $325,514.17 with an unpaid principal balance of $174,928.83 as of October 26, 2019, with contractual interest at the rate of 7.026%, which results in a per diem rate until entry of this order and the statutory rate thereafter; and the Court further

**ORDERS** that the mortgaged property at 805 Old Schaghticoke Road, Schaghticoke, New York 12154 (the "Property") cannot be sold in parcels; and the Court further

**ORDERS** that the Property shall be sold pursuant to RPAPL § 1351, a deed shall be issued in accordance with RPAPL 1353(1) and the sale proceeds shall be distributed in accordance with RPAPL § 1354; and the Court further

**ORDERS** that the Property shall be sold in one parcel at public auction to the highest bidder, as authorized under RPAPL § 231(a), at the Front Lobby of the Rensselaer County Courthouse, Congress & Second Street, City of Troy, by Michelina Capozzolo Wojton, Esq., 5 Adams Court, Averill Park, New York (518)605-4447, who is hereby appointed Referee to effectuate the sale of the Property; that public notice of the time and place of the sale shall be made by the Referee in compliance with RPAPL § 231(2)(a) and the practice of this Court, and

published in *The Record* or in publication in compliance with RPAPL § 231; and the Court

further

**ORDERS** that the Property shall be sold in "as is" condition defined as the condition the

premises are in as of the date of sale and continuing through the date of closing, and that said sale

shall be subject to:

(a)     Rights of the public and others in and to any part of the Property that lies
within the bounds of any street, alley, or highway; restrictions and
easements of record;

(b)     Any state of facts that an accurate, currently dated survey might disclose;

(c)     Rights of tenants, occupants or squatters, if any.  It shall be the
responsibility fo the Purchaser to evict or remove any parties in possession
of the Property being foreclosed.  There shall be no pro-rata adjustment in
favor of the Purchaser for any rents that are paid for a period after the date
of the foreclosure sale; and

(d)     The right of redemption of the United States of America, if any; and the
Court further

**ORDERS**, in accordance with RPAPL § 1353(1), that Plaintiff or any other parties to this

action may become the purchaser or purchasers at such sale; and the Court further

**ORDERS** that the Referee at the time of sale may accept a written bid from Plaintiff or

Plaintiff's attorneys, just as through Plaintiff was physically present to submit said bid; and the

Court further

**ORDERS** that the terms of sale, to the extent they do not contradict this judgment or

violate any law, shall be binding in all respects on the purchaser; and the Court further

**ORDERS** that, after the sale the Referee shall deposit, in his/her name as Referee, the

initial bid deposit in his/her IOLA or Separate Account, in a bank or trust company authorized to

transact business in New York.  This account shall be used solely to complete the closing of the

sale and payment of the items referenced herein as needed; and the Court further

15

**ORDERS** that, in accordance with RPAPL § 1351(1), upon payment of the purchase price the Referee is directed to make the following payments or allowance from the sale proceeds to Plaintiff,

> FIRST:     Payment pursuant to CPLR § 8003, by the Referee of five hundred dollars ($500.00) which represents the statutory fees for his/her conducting the sale of the subject Property.

> SECOND:     Payment by the Referee for the costs of advertising or posting as listed on bills submitted to and certified by the Referee to be correct.

> THIRD:     Payment, in accordance with RPAPL § 1354(1) by the Referee to Plaintiff or its attorney for the following: amount due Plaintiff; costs and disbursements; attorney fees and an additional allowance, if awarded.

> FOURTH:     Payment, in accordance with RPAPL § 1354(2), of all taxes, assessments and water rates that are liens upon the Property and redeem the Property from any sales for unpaid taxes, assessments, or water rates that have not apparently become absolute with such interest or penalties which may lawfully have accrued thereon to the day of payment; and the Court further

**ORDERS** that Plaintiff may, after entry of this judgment, make all necessary advances for inspections and maintenance of the Property, taxes, insurance premiums or other advances necessary to preserve the Property, whether or not said advances were made prior to or after entry of judgment, so long as said advances are not included in the amount due Plaintiff awarded herein, and that the Referee be provided with receipts for said expenditures, which amounts together with interest thereon at the note rate from the date of the expense until the date of entry of this judgment, then with interest at the judgment rate until the date of transfer of the Referee's Deed shall be included in the amount due Plaintiff; and the Court further

**ORDERS** that if Plaintiff is the purchaser at sale, the Referee shall not require Plaintiff to pay either a deposit or the bid amount, but shall execute and deliver to Plaintiff a deed of the

premises sold upon the payment of the statutory fees of $500.00 for conducting the sale of the subject Property.  Plaintiff shall provide the Referee with proof of the amounts paid for taxes, assessments and water rates upon recording of the deed.  The balance of the bid amount shall be applied to the amounts due to Plaintiff as specified herein and that if after applying the balance of the bid amount there is a surplus, Plaintiff shall pay it to the Referee, who shall deposit the funds. In accordance with RPAPL § 1354(4), the Referee shall take receipts for the money so paid out by him/her and file the same with his/her report of sale, and that he/she deposit the surplus moneys, if any, with the Treasurer of Rensselaer Count within five (5) days after same shall be received and ascertainable, to the credit of this action, to be withdrawn only upon the order of the Court, signed by a judge of this Court; that the Referee make a report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom the payments were made with the Clerk of the County of Rensselaer within thirty (30) days of completing the sale, and executing the proper conveyance to the purchaser; and the Court further

ORDERS that transfer tax is not a lien upon the Property or an expense of sale, but rather an expense of recording the deed.  All expenses of recording the Referee's Deed shall be paid by the purchaser and not the Referee from sale proceeds.  Purchaser shall be responsible for interest accruing on real property taxes after the date of the foreclosure sale; and the Court further

ORDERS that the Referee shall make a report of sale in accordance with RPAPL § 1355(1), showing the disposition of the sale proceeds accompanied by the receipts for payments made and file it with the Clerk of the Court within thirty (30) days of completing the sale; and the Court further

17

**ORDERS** that the purchaser or purchasers at such sale be let into possession on producing the Referee's Deed; and the Court further

**ORDERS** that each and all of the Defendants in this action and all persons claiming under them, or any or either of them, after the Filing of such Notice of Pendency of this action, be and they hereby are, barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said Property and each and every part thereof; and the Court further

**ORDERS** that the liens of Plaintiff other than the mortgage or mortgages that are the subject matter of this action are also foreclosed herein as though Plaintiff was named as a party Defendant, specifically reserving to Plaintiff its right to share in any surplus monies as a result of such position as a lien creditor; and the Court further

**ORDERS** that, by accepting this appointment, the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR, Part 36), including, but not limited to, § 36.2(c) ("Disqualification from appointment") and § 36.2(d) ("Limitations on appointments based upon compensation") and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the appointing Judge forthwith; and no fee shall be paid to such appointee until said appointee has filed all necessary OCA forms with the Court; and the Court further

**ORDERS** that, pursuant to CPLR § 8003(b), absent application to the Court, further Court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand, accept or receive more than the statutory amount of five hundred dollars ($500.00) otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay or stay of the sale; and the Court further

**ORDERS** that the Property be sold by the Referee, in accordance with RPAPL § 1351(1); that the date of the judgment is deemed the date it is entered; and that if the Referee cannot conduct the sale within ninety (90) days of the date of the judgment, in accordance with Fed. R. Civ. P. 6(b), the time fixed by RPAPL § 1351 is extended for the Referee to conduct the sale as soon as reasonably practicable; and the Court further

**ORDERS** that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 20, 2023
     Albany, New York

Mae A. D'Agostino
U.S. District Judge